Donna STERLING, Plaintiff,

v.

INTERLAKE INDUSTRIES INC., Noeller Industries and Store Dynamics Corp., Defendants.

The INTERLAKE COMPANIES, INC., Third–Party Plaintiff,

v.

CONSUMERS DISTRIBUTING INC., Third–Party Defendant.

No. CV 93–2287 (ADS).

United States District Court, E.D. New York.

April 8, 1994.

Gucciardo & Bower, New York City, NY (Charles Gucciardo, Mark R. Bower, of counsel), for plaintiff.

Heidell, Pittoni, Murphy & Bach, P.C., New York City (Michael J. Galluzzi, Denise A. Rubin, of counsel), for defendant and third party plaintiff The Interlake Companies, Inc., improperly s/h/a Interlake Industries, Inc.

Amhuty, Demers & McManus, Albertson, NY, for third-party defendant Consumers Distributing Inc.

## OPINION AND ORDER

SPATT, District Judge:

This case involves a products liability action, removed from the New York State Supreme Court, Nassau County to this Court on the basis of diversity jurisdiction. The defendant and third-party plaintiff Interlake Companies, Inc. ("Interlake Co."), improperly designated in the caption as "Interlake Industries Inc.", moves pursuant to Fed. R.Civ.P. 56(b) for summary judgment in its favor to dismiss the Complaint as against it, because the plaintiff allegedly has brought this action against the wrong defendant. The plaintiff opposes the defendant's motion on the ground that the defendant is estopped from raising its defenses.

In the event the Court grants the defendant's motion for summary judgment, the plaintiff moves, in the alternative, pursuant to Fed.R.Civ.P. 15(c) to amend her Complaint a second time, in order to name the proper defendant.

## BACKGROUND

The plaintiff Donna Sterling alleges that she was injured on July 12, 1990, when a certain metal storage rack collapsed and fell on her while she was working on the premises of her employer, the third-party defendant Consumers Distributing, Inc. ("Consumers") located at 655 Montauk Highway, North Babylon, New York. Initially, the plaintiff alleged that the storage rack at issue was manufactured and distributed by Interlake Industries Inc. The defendant Store Dynamics Corp. ("Store") sold the rack to Consumers on August 26, 1985, and the defendant Noeller Industries ("Noeller") installed the storage rack. Noeller and Store have yet to appear or file an answer in this action.

On March 23, 1993 Sterling commenced a personal injury action against Interlake Industries Inc. in the New York State Supreme Court, Nassau County. The case was removed to this Court on May 20, 1993 by the defendant Interlake Co. Sterling served an amended Complaint the next day. Interlake Co. commenced a third-party action against Consumers on May 27, 1993 and filed an amended answer on June 14, 1993.

The amended Complaint alleges that Interlake Industries Inc. negligently designed, manufactured, produced and distributed the storage rack which caused the plaintiff's injuries, and sets forth causes of action for negligence and strict products liability against Interlake Industries Inc., as well as the other defendants.

## MOTIONS BEFORE THE COURT

### 1. Interlake Co.'s Motion for Summary Judgment.

Interlake Co. moves for summary judgment to dismiss the Complaint as against it, because Interlake Co. contends it neither designed, manufactured, produced or distributed the metal storage rack at issue. Rather, Interlake Co. claims that the storage rack was manufactured and distributed by Redirack Interlake Storage Products, Inc. ("Redirack"). Redirack was a wholly owned Canadian subsidiary of Interlake Co.'s corporate predecessor, which was dissolved in 1991.

According to Interlake Co. the named defendant in this case, Interlake Industries Inc., was a subsidiary of Interlake Incorporated, and dissolved in 1977. Interlake Incorporated had many other subsidiaries, one of which was Redirack. In 1990, Interlake Incorporated was merged into the Acme Steel Company, and all of its subsidiaries, including Redirack, became subsidiaries of a new company, Interlake Co., the defendant/third-party plaintiff here and movant. Interlake Co. and Acme Steel Company in turn, became wholly owned subsidiaries of a new parent holding company, The Interlake Corporation. On December 30, 1991, Redirack was amalgamated into Acme Strapping Inc. ("Acme Strapping"), a Canadian corporation in which Interlake Co. owns a minority share and Interlake Packaging Corporation owns a majority share. Interlake Packaging Corp. is a wholly owned subsidiary of Interlake Co. Section 14(c) of the Amalgamation Agreement between Acme Strapping and Redirack, which has been submitted by Interlake Co. as Exhibit "G" attached to the affidavit accompanying its notice of motion, provides that Acme Strapping assumed all of the corporate liabilities of Redirack. Upon the amalgamation, Redirack was dissolved.

Interlake Co. (hereafter "Interlake", unless otherwise indicated) contends that Redirack—and Acme Strapping as its successor—is the proper defendant in this case, because Redirack manufactured and distributed the storage rack that allegedly collapsed and injured the plaintiff. To support its contentions, Interlake has submitted, among other documents, the affidavits of an Interlake company engineer who inspected the rack at Consumers on August 20, 1993, together with counsel for the plaintiff and Consumers. The engineer's affidavit includes pictures of the rack with a decal on it indicating it was made by Redirack. Moreover, after discussing the rack with two former sales and marketing officials of Redirack, the engineer states that he and the former Redirack officials agree that the rack was manufactured by Redirack, and is known as a "QA Rack" (Quick Assembly Rack). This contention is corroborated by the affidavits of the two former Redirack officials.

In addition to this affidavit, Interlake has submitted copies of the bill of sale by the defendant Store to Consumers documenting the sale of the rack, and the invoice by the defendant Noeller documenting the installation costs of the racks.

Interlake also contends that as the corporate parent of Redirack, it cannot be held responsible for the plaintiff's injuries in this case under any theory of liability, because Redirack and Interlake were separate and independent corporations. At the time of the alleged accident in 1990, Redirack was a wholly-owned subsidiary of Redirack Holdings Ltd., which in turn was a wholly-owned subsidiary of Interlake. Interlake asserts that it never exerted any control over the day-to-day business operations of Redirack—a company two levels down in the corporate ladder—that would warrant piercing the corporate veil to reach Interlake.

According to the affidavits of the controller for Interlake and the former vice-president and controller for Redirack, the independence of Interlake from its former subsidiary is evidenced by the following: (1) Redirack maintained separate corporate formalities from Interlake, including separate minute books, issuance of stock, corporate elections, and corporate records; (2) Redirack was always adequately capitalized, and never transferred money to Interlake for Interlake's own benefit; (3) Redirack officials made the day-to-day business and financial decisions of the company, and negotiated its own contracts; (4) even though certain officers of Interlake would be appointed Redirack officers, such officers and managers were not

controlled by Interlake officers; (5) Redirack maintained separate offices, equipment and manufacturing facilities from Interlake; (5) Redirack designed and produced its own line of racks and products, and marketed these to its own customers; (6) Redirack filed its own tax returns; and (7) Interlake did not sell raw rolled steel to Redirack at favorable prices.

Based on the affidavits and other documents submitted to support its position, Interlake argues it is entitled to summary judgment dismissing the Complaint against it as a matter of law because it did not manufacture or distribute the QA Rack, and is not vicariously liable for Redirack's actions.

### 2. The Plaintiff's Response and Cross Motion to Amend the Complaint.

In responding to the defendant's contentions, the plaintiff does not dispute the facts concerning Redirack's manufacture of the QA Rack, nor does she contest the assertions that Interlake and Redirack are separate and independent companies. Indeed, in Paragraph 9 of the plaintiff's Reply Affidavit, plaintiff's counsel admits that Redirack is the manufacturer of the storage rack at issue. Rather, the plaintiff contends that summary judgment should be denied for essentially two reasons.

First, because the defendant did not adhere to an order of United States Magistrate Judge Michael L. Orenstein requiring the defendant to move to dismiss by Friday, February 4, 1994, or else the motion would be deemed waived. The plaintiff contends that the motion to dismiss was not served until after the last mail pick-up on February 4, 1994, and therefore the motion has been waived.

Second, the plaintiff contends that the defendant is estopped from pursuing its motion because, according to the plaintiff, Interlake misled the plaintiff into believing that Interlake was the manufacturer of the QA Rack, and did not disclose to the plaintiff the relationship of Interlake to Redirack until after the three year statute of limitations period for bringing a suit against Redirack had expired. The plaintiff argues that it could not have discovered the facts supporting the defendant's contentions of Redirack's manufacturing the QA Rack, and Redirack's independent existence from Interlake, on its own.

According to the plaintiff's counsel, his office investigated, with "due diligence," the relationship between Interlake and Redirack from February thru April 1993. This "investigation" entailed (1) calling Redirack and Interlake telephone numbers to ascertain the location of their offices, and (2) reviewing the 1992 Annual Report of Interlake. The plaintiff claims that upon calling the telephone numbers and speaking with *receptionists*, his associate was told that Redirack and Interlake are the same company. Additionally, the Interlake Annual Report lists four categories of "major plant sites" none of which mention Redirack. Based on this information, the plaintiff decided that Interlake was the proper defendant to name in the Complaint.

Moreover, the plaintiff alleges that in the defendant's answer and amended answer, and in interrogatory responses, the defendant did not explain or suggest that Redirack existed as a separate corporation or otherwise was the responsible party. The plaintiff further alleges that Interlake waited until after the statute of limitations had run against Redirack before it revealed Redirack's identity. According to the plaintiff, because Interlake was misleading about its relationship with Redirack, the defendant should be estopped from moving to dismiss the Complaint on the grounds that it is not the real party in issue.

The plaintiff also gives a third reason for the Court's rejection of the defendant's motion. The plaintiff contends that insofar as the defendant did not disclose the facts regarding Redirack to the plaintiff, the court should either grant a continuance of this proceeding in order to allow the plaintiff additional discovery under Fed.R.Civ.P. 56(f), or dismiss the motion outright as a sanction pursuant to Fed.R.Civ.P. 37(c).

If the Court does grant the defendant's motion for summary judgment, the plaintiff moves in the alternative to amend the complaint, in order to add Redirack as the defendant in the place and stead of Interlake.

The plaintiff contends that the requirements set forth in Fed.R.Civ.P. 15(c) for amending a complaint to add a party are met in this case, because Redirack had constructive notice of this lawsuit through its corporate officers who are also officers of Interlake.

## DISCUSSION

### Summary Judgment Standard

A court may grant summary judgment "only if the evidence, viewed in the light most favorable to the party opposing the motion, presents no genuine issue of material fact," *Cable Science Corp. v. Rochdale Village, Inc.*, 920 F.2d 147, 151 (2d Cir.1990), and the movant is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56(c). The Court must, however, resolve all ambiguities and draw all reasonable inferences in the light most favorable to the party opposing the motion. *See Twin Laboratories, Inc. v. Weider Health & Fitness*, 900 F.2d 566, 568 (2d Cir.1990); *Liscio v. Warren*, 901 F.2d 274, 276 (2d Cir.1990); *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987).

Once a party moves for summary judgment, in order to avoid the granting of the motion, the non-movant must come forward with specific facts showing that a genuine issue for trial exists. *Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir.1990) (quoting Fed.R.Civ.P. 56(e)); *National Union Fire Ins. Co. v. Turtur*, 892 F.2d 199, 203 (2d Cir.1989). A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510; (*Converse v. General Motors Corp.*, 893 F.2d 513, 514 [2d Cir.1990] ). If there is evidence in the record as to any material fact from which an inference could be drawn in favor of the non-movant, summary judgment is unavailable. *Rattner v. Netburn*, 930 F.2d 204 (2d Cir.1991).

However, mere conclusory allegations, speculation or conjecture will not avail a party resisting summary judgment. *Western World*, 922 F.2d at 121. Although the nonmoving party need not produce evidence in a form that would be admissible at trial in order to avoid summary judgment, Fed.R.Civ.P. 56(c) and (e) provide that the nonmoving party cannot rest on the pleadings but must set forth specific facts in the affidavits, depositions, answers to interrogatories, or admissions on file showing there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

Finally, when determining a motion for summary judgment, the Court is charged with the function of "issue finding", not "issue resolution." *Eye Assocs., P.C. v. IncomRx Sys. Ltd. Partnership*, 912 F.2d 23, 27 (2d Cir.1990).

Pursuant to Rule 3(g) of the Joint Rules for Civil Proceedings for the United States District Courts for the Southern and Eastern Districts of New York, a party moving for summary judgment must submit a separate and concise statement of the material facts that they contend are not in dispute. The papers opposing a motion for summary judgment shall include a separate and concise statement of the material facts that the opposing party contends are in dispute. Unless controverted by the opposing party, all material facts set forth in the statement required to be served by the moving party will be deemed to be admitted.

### 1. The Defendant's Motion for Summary Judgment

#### A. Timeliness of Defendant's Motion.

Contrary to the contentions of the plaintiff, in this Court's view the defendant has not waived its right to file the instant motion. Magistrate Judge Orenstein originally directed that the defendant move to dismiss the Complaint by January 30, 1994, and then granted an extension until February 4, 1994. The certificates of service and affidavits indicate the motion was mailed to the defendants on February 4, 1994. "Service by mail is complete upon mailing." Fed.R.Civ.P. 5(b). The Federal Rules do not say anything about mailing before the close of business or after the "last mail pick-up of the day." Moreover, no prejudice to the plaintiff resulted from such a mailing. Accordingly,

the defendant's motion is not deemed to have been waived.

### B. *The Defendant is not Estopped From Bringing its Motion.*

■ The doctrine of equitable estoppel "precludes a party at law and in equity from denying or asserting the contrary of any material fact which he has induced another to believe and to act on a particular manner." *Holm v. C.M.P. Sheet Metal, Inc.,* 89 A.D.2d 229, 455 N.Y.S.2d 429, 433 (4th Dept.1982). The elements of equitable estoppel as to the party being estopped are:

1. An act constituting a concealment of facts or a false misrepresentation;

2. An intention or expectation that such acts will be relied upon;

3. Actual or constructive knowledge of the true facts by the wrongdoer;

4. Reliance upon the misrepresentations which causes the innocent party to change its position to its substantial detriment.

*See Holm, supra,* 455 N.Y.S.2d at 433; *Gratton v. Dido Realty Co., Inc.,* 89 Misc.2d 401, 391 N.Y.S.2d 954, 955 (Sup.Ct.Queens Co. 1977), *aff'd* 63 A.D.2d 959, 405 N.Y.S.2d 1001 (2d Dept.1978); *Special Event Entertainment v. Rockefeller Center,* 458 F.Supp. 72, 76 (S.D.N.Y.1978) (citing New York cases).

■ There does not have to be an actual attempt to mislead. It is sufficient that the party being estopped knew or had reason to believe that their acts or inaction might prejudice the party asserting the estoppel. *Simmons v. Westwood Apartments Co.,* 46 Misc.2d 1093, 261 N.Y.S.2d 736, 740 (Sup.Ct. Onon.Co.1965), *aff'd* 26 A.D.2d 764, 271 N.Y.S.2d 731 (4th Dept.1966), *appeal dismissed* 18 N.Y.2d 786, 275 N.Y.S.2d 271, 221 N.E.2d 811 (1966).

■ The plaintiff contends that the above elements are satisfied with respect to Interlake's conduct, because Interlake allegedly misled the plaintiff into believing that Redirack and Interlake were the same corporation prior to the commencement of the suit, and did not disclose that they are separate and independent companies in its pleadings or discovery responses.

Two examples of such misleading offered by the plaintiff are the responses by the defendant to interrogatory questions. The first interrogatory asked whether Interlake designed, manufactured, assembled, distributed or in any way handled the rack and shelves at issue. Interlake responded that,

in relation to the rack system inspected by representatives of INTERLAKE on August 20, 1993 on the premises of Consumers Distributing, Inc., a former subsidiary of THE INTERLAKE COMPANIES, INC. known as Redirack Interlake Storage Products, Inc. for a certain period of time manufactured and sold certain industrial rack systems not specifically identified herein which are similar to some but not all of the racks systems located on the premises of Consumers.

The second interrogatory asked Interlake to identify the relationship between Interlake and Redirack. In response, Interlake stated "Redirack is no longer a corporation and is now a division of Acme Strapping Inc. a company in which the Interlake Companies, Inc. is a shareholder."

The plaintiff claims that through these responses and the statements in the defendant's amended answer, which allegedly do not mention Redirack, Interlake conveyed the facts to be other than they truly were, with the knowledge and expectation that such representations would be relied upon by the plaintiff. According to the plaintiff, she was prejudiced in relying on these responses, because the statute of limitations for bringing a suit against Redirack has expired.

The defendant argues that the elements of estoppel are not met in this case because it never misled, or had reason to expect its actions would mislead the plaintiff into thinking that Redirack and Interlake are the same company. The defendant contends that the interrogatories were not sent to it until August 24, 1993, after the expiration of the time period to bring a suit against Redirack. Moreover, it was not until the August 20, 1993 inspection that Interlake discovered that Redirack may have manufactured the rack. Until that time, there was no description of the rack by the plaintiff. Since Interlake also manufactures certain industrial

shelves and racks, Interlake answered the complaint on the basis that it may have made the rack.

Finally, Interlake asserts that the plaintiff's "due diligence investigation" of Redirack from February thru April of 1993 leaves much to be desired. Interlake contends that any reliance by the plaintiffs on the statements of receptionists answering a phone call is inappropriate. Moreover, Interlake claims the plaintiffs misread the 1992 Interlake Annual Report, which listed the major plant sites of Interlake, and not every corporate subsidiary.

In this Court's view, Interlake is not estopped from asserting its defenses, because the elements of estoppel are not met. Neither the interrogatory responses—which responded to interrogatories submitted by the plaintiff *after* the expiration of the statute of limitations period—the statements in Interlake's amended answer, nor the alleged receptionists' responses to the plaintiff's counsel's questions, constitute a concealment of material facts, false misrepresentation, intention to mislead the plaintiff, or a reasonable expectation on Interlake's part that these statements would be relied upon to the plaintiff's detriment.

As to this aspect of the case, the Court takes judicial notice that a five minute exercise on the NEXIS database, or a review of Standard & Poor's Corporate Descriptions, would disclose, in detail, not only every subsidiary of Interlake and the relationship of Interlake to Redirack, but also that Redirack had merged into Acme Strapping Inc.

The cases cited by the plaintiff to support its estoppel claim are inapposite. These cases display conduct by the party estopped which is far more likely to mislead the other party than in this situation. For example, in *Ryder Truck Rental, Inc. v. Williamstown Wire & Cable Co.*, 62 Misc.2d 848, 309 N.Y.S.2d 508 (Sup.Ct.Onon.Co.1970), the plaintiff, a truck rental company, had specifically agreed in a lease to assume all damages in excess of $100. It then sought to recover more than that amount from the defendant, on the basis that the defendant had driven without a license in breach of the truck lease. The court held that the plaintiff was es-

topped from seeking more than the $100 dollars in damages from the defendant, because it knew when it leased the truck that the defendant did not have a valid license. In *Simmons, supra*, the court held that the plaintiffs were estopped from seeking damages for trespass to their property from a subsequent purchaser of the property, because they had knowledge of and ratified a prior modification of their property deed which had shortened the boundary of their property. In this case, there is no such conduct on the part of Interlake that could have been expected to mislead the plaintiff.

C. *Continuance or Dismissal Under Rules 56(f) or 37(c).*

The plaintiff contends that she cannot sufficiently address the facts alleged by Interlake which claim that Interlake and Redirack are separate entities, because these facts were not previously disclosed to her. In order to adequately address these allegations, the plaintiff argues that the Court should grant a continuance of this motion pursuant to Rule 56(f), and allow the plaintiff additional time to conduct discovery. Moreover, because the defendant was not forthcoming in its interrogatory responses regarding Redirack's relationship to Interlake, the plaintiff argues that the Court should dismiss the defendant's motion outright pursuant to Rule 37(c). Each of these arguments is unpersuasive.

Rule 56(f) states that if a party opposing a motion for summary judgment cannot by affidavit present facts to justify its position, the Court may order a continuance for additional discovery to be taken. In order to obtain a continuance to permit additional discovery, the party seeking the continuance must establish that he or she was denied reasonable access to the material requested, and that the material requested constitutes potentially favorable information. In addition, the party must identify specific issues to be disclosed if the court grants the opportunity to pursue additional discovery. *Tucker Leasing Capital Corp. v. Marin Medical Management, Inc.*, 833 F.Supp. 948, 955 (E.D.N.Y.1993).

■ Specifically, a party seeking discovery under Rule 56(f) must file an affidavit explaining: "(1) what facts are sought and how they are to be obtained; (2) how those facts are reasonably expected to create a genuine issue of material fact; (3) what effort the affiant has made to obtain them; and (4) why the affiant was unsuccessful in those efforts." *Hudson River Sloop Clearwater v. Dept. of Navy,* 891 F.2d 414, 422 (2d Cir.1989); *Tucker Leasing, supra,* 833 F.Supp. at 960.

■ The plaintiff has failed to meet these threshold requirements. Nothing in the plaintiff's affidavit or counterstatement of facts identifies specific issues to be disclosed if the court grants the opportunity to plaintiff to pursue additional discovery. Moreover, the plaintiff had, at the very least, from the time Interlake filed its interrogatory responses to substantiate through additional discovery the relationship of Interlake to Redirack. Therefore, a dismissal of the defendant's motion, or a continuance of this proceeding to allow for additional discovery is not warranted.

■ Dismissal of the defendant's motion pursuant to Rule 37(c) is also not warranted. Rule 37(c)(1) states that a party who, without substantial justification fails to disclose information required by Rule 26, shall not be permitted to use as evidence on a motion any information not so disclosed. Imposition of sanctions under Rule 37 is a drastic remedy, however, and should only be applied in those rare cases where a party's conduct represents flagrant bad faith and callous disregard of the Federal Rules of Civil Procedure. *See e.g., Burks v. Eagan Real Estate Inc.,* 742 F.Supp. 49 (N.D.N.Y.1990) (discussing default under Rule 37).

In this Court's view, the defendant's answer and its responses to the plaintiff's interrogatories do not qualify as "flagrant bad faith" or "callous disregard" for the Federal Rules. The plaintiff never properly identified the rack at issue. Until Interlake inspected the rack in August, 1993, it was not unreasonable for Interlake to presume it may have manufactured the rack, and to formulate its answer with this presumption in mind. Upon determining that the rack was manufactured by Redirack after the August

20, 1993 inspection, Interlake promptly disclosed the identity of Redirack to the plaintiff. That the plaintiff served the request for interrogatories after the termination of the statute of limitations period is no fault of the defendant.

Accordingly, the Court will neither dismiss the defendant's motion, nor grant a continuance for further discovery.

D. *Summary Judgment is Warranted in this Case.*

The plaintiff does not dispute that Redirack manufactured the QA rack at issue. Moreover, with respect to the separate identities of Interlake and Redirack, in its counterstatement of material facts the plaintiff has not offered any specific facts that indicate a genuine issue for trial exists. *See Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. Rather, the plaintiff's counterstatement is limited to setting forth the plaintiff's allegations regarding Interlake's untimely filing of the motion, and Interlake's conduct purportedly misleading the plaintiff as to the Interlake–Redirack relationship.

■ Having not disputed the facts alleged by Interlake regarding the separate identities of Interlake and Redirack, those allegations are deemed admitted and uncontroverted. *Tucker Leasing,* 833 F.Supp. at 957. Accordingly, the Court may proceed to examine whether, under New York law, Interlake may be held vicariously liable for the conduct of Redirack.

■ As a general rule, the law treats corporations as having a separate identity. *Billy v. Consolidated Machine Tool Corp.,* 51 N.Y.2d 152, 432 N.Y.S.2d 879, 885–86, 412 N.E.2d 934, 940–41 (1980). In order to disregard the corporate form—to "pierce the corporate veil"—and hold a parent company liable for the acts of its subsidiary, the parent company must essentially have exercised such control over the day-to-day operations of the subsidiary, that the subsidiary had become a mere instrumentality of the parent. *Id.,* 432 N.Y.S.2d at 886, 412 N.E.2d at 941–42; *Berkey v. Third Ave. R.R. Co.,* 244 N.Y. 84, 95, 155 N.E. 58 (1926) (J. Cardozo) ("Do-

minion must be so complete, interference so obtrusive, that by the general rules of agency the parent will be a principal and the subsidiary an agent."); *Pebble Cove Homeowners' Assoc., Inc. v. Fidelity N.Y.,* 153 A.D.2d 843, 545 N.Y.S.2d 362, 363 (2d Dept.1989). *See also Wm. Passalaqua Builders v. Resnick Developers,* 933 F.2d 131, 137–138 (2d Cir. 1991) (citing New York law).

■■■ Domination by the parent over the subsidiary is not evidenced by the mere fact of an ownership of the controlling interest of stock. *Billy, supra,* 432 N.Y.S.2d at 886, 412 N.E.2d at 941–42. Rather, disregard of the corporate form is evidenced by consideration of the following factors: (1) the absence of corporate formalities, such as the issuance of stock, election of directors, and keeping of corporate records; (2) inadequate capitalization; (3) whether funds are transferred to the parent for the parent's use; (4) overlap in ownership, officers, directors, and personnel; (5) common office space, address and telephone numbers of the corporate entities; (6) the amount of business discretion displayed by the allegedly dominated company; (7) whether the corporations deal with each other at arms length; (8) whether the allegedly dominated corporation is treated as an independent profit center; (9) the payment of debts and guarantees by the parent for the benefit of the subsidiary; and (10) whether the subsidiary uses property of the parent as if it were its own. *Resnick, supra,* 933 F.2d at 139.

■■■ A determination of domination and control by the parent over the daily operations of a subsidiary is usually a matter for the trier of fact. However, where a complaint fails to allege the means by which the parent dominates and controls the subsidiary, and where the documentation submitted in opposition to a motion for summary judgment is devoid of evidentiary facts in support of a plaintiff's contention that a parent dominates and controls the subsidiary, it is appropriate to dispose of the matter on a motion for summary judgment. *See e.g., Bruntfield v. Ridge Tool Co., Inc.,* 546 F.Supp. 553, 555–57 (S.D.N.Y.1982) (where parent offered affidavits by corporate officers attesting to lack of domination over subsidiary, court granted summary judgment in favor of parent because plaintiff failed to allege domination of parent over subsidiary, and failed to controvert in Rule 3(g) statement that parent did not control subsidiary); *accord Pebble Cove, supra,* 545 N.Y.S.2d at 363–64.

Based on the affidavits of the Interlake and Redirack controllers, and the lack of any controverting facts alleged by the plaintiff, it is the Court's view that, as a matter of law, the corporate formalities between Interlake and Redirack cannot be disregarded in this case. A consideration of the factors enunciated by the Second Circuit in *Resnick* leads this Court to conclude that Interlake did not control or dominate the day-to-day operations of Redirack, or otherwise use Redirack for its own purpose. Apart from sharing several officers, these corporations maintained separate identities, facilities, product lines, and geographical locations. Redirack was hardly an "instrumentality" of Interlake. Interlake is not liable for Redirack's actions, and is not liable to the plaintiff in this case.

Accordingly, Interlake's motion for summary judgment is granted, and the Complaint as against Interlake is dismissed as a matter of law.

## 2. The Plaintiff's Motion to Amend the Complaint.

■■■ In the alternative, the plaintiff moves for the Court to amend her complaint pursuant to Rule 15(c), in order to add Redirack and Acme Strappings as defendants in this case. The plaintiff contends that although the three year statute of limitations period for bringing an action against Redirack has expired, an amendment of the complaint will relate back to the time the complaint was filed, which time was within the statute of limitations period.

Rule 15(a) provides that "leave [to amend a pleading] shall be freely given when justice so requires." *See also Gumer v. Shearson, Hammill & Co.,* 516 F.2d 283, 287 (2d Cir. 1974). Only "undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party ... [or] futility of the

amendment" will serve to prevent an amendment prior to trial. *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *accord Reiter's Beer Distributors, Inc. v. Christian Schmidt Brewing Co.,* 657 F.Supp. 136, 141 (E.D.N.Y.1987); *Health–Chem Corp. v. Baker,* 915 F.2d 805 (2d Cir.1990).

The party opposing the motion for leave to amend has the burden of establishing that an amendment would be prejudicial, *Panzella v. Skou,* 471 F.Supp. 303, 305 (S.D.N.Y.1979), and "[u]nless a proposed amendment is clearly frivolous or legally insufficient on its face, the substantive merits of a claim or defense should not be considered on a motion to amend." *Lerman v. Chuckleberry Pub., Inc.,* 544 F.Supp. 966, 968 (S.D.N.Y.1982), *rev'd on other grounds sub nom.,* 745 F.2d 123 (2d Cir.1984), *cert. denied,* 471 U.S. 1054, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985).

Rule 15(c) allows the amendment of a pleading adding a party to relate back to the time the pleading was filed, when (1) the claim or defense asserted in the amended pleading arose out of the same transaction or occurrences set forth in the original pleading, and (2) within the 120 day period provided by Rule 4(m) for answering a complaint, the party to be brought in by the amendment (a) received such notice of the institution of the action that it will not be prejudiced in maintaining a defense on the merits, and (b) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

The Court must determine whether the amendment adding Redirack is futile because the action against Redirack would be barred by the statute of limitations. Resolution of this issue, in turn, depends on whether the conditions allowing the amendment to relate back to the time the complaint was filed— and, therefore to a time prior to the expiration of the statute of limitations—have been met.

There is no doubt that the first condition for relating the amendment back is met, as the occurrences giving rise to the action against Redirack are the same as those underlying the action against Interlake. There is some doubt, however, as to whether the second condition of notice has been met.

The plaintiff contends that the second condition has been met, because Acme Strappings, Redirack's successor, had notice of the action against Interlake. This notice was allegedly effected through the directors of Interlake who also serve on the board of Redirack and/or Acme Strappings. The plaintiff then alleges that Redirack should have known that, but for the mistaken name of Interlake in the complaint, Redirack was the real party in interest.

These allegations are unsubstantiated. Nowhere does the plaintiff set forth who the directors of Interlake and Acme Strappings were at the time the complaint was filed, and which directors allegedly sit on both boards of directors and had notice that Redirack and Acme Strappings were the real parties in issue.

The plaintiff further contends that there is such an "identity of interest" between Interlake and Redirack, that notice of the law suit must have occurred. However, the two cases relied upon by the plaintiff in support of her argument involve situations where the parent company and subsidiary were *closely related.*

In *Travelers Indemnity Co. v. United States,* 382 F.2d 103 (10th Cir.1967), the original complaint had named the parent Travelers Insurance Company as the defendant, rather than the subsidiary Travelers Indemnity Company. After the statute of limitations had expired for bringing an action against the Travelers Indemnity Company, the plaintiff moved to amend the Complaint in order to add The Travelers Indemnity Company as the correct defendant. The Tenth Circuit affirmed the district court's ruling allowing the amendment, and estopping the parent Travelers Insurance Company from raising the statute of limitations defense, because of the two companies' close relation:

> The trial court found that the Travelers Insurance Company owns 100% of the capital stock of Travelers Indemnity Company, that the two companies have the same managers and directors and occupy the

same office, that the two corporations are closely related, and that their activities supplement one another. *Travelers*, 382 F.2d at 106. Based on these facts, the Tenth Circuit concluded that the named defendant in the complaint, Travelers Insurance Company, "hid behind the bushes" when it answered the complaint and did not suggest that Travelers Indemnity Company was the correct defendant to sue.

Similarly, in *Bernstein v. Uris Building Corporation*, 50 F.R.D. 121 (S.D.N.Y.1970), the plaintiff moved, after the applicable statute of limitations period had expired, to amend the complaint in order to name as the correct defendant the "Uris 245 Park Corporation." The court allowed the amendment based on the "identity of interest" of the two companies. The court noted that the companies were substantially similar, because they shared officers and directors, the same principal office, and the same name. According to the *Bernstein* court, "[t]he identity of management and location establishes essentially that notice to one was notice to the other." *Id.* at 122.

In this case, there is no such evidence offered of an identity of management or location, or of a close relationship existing between the parent Interlake Co. and its subsidiary Acme Strappings, Redirack's successor. Therefore, the Court cannot determine whether there was notice to Acme that Redirack was the proper defendant in this case, and as a result, whether the defense of the statute of limitations would apply and the amendment of the complaint would be futile.

Because Rule 15(a) requires that leave to amend a pleading shall be freely given, the Court will grant the plaintiff's motion to amend the complaint, without prejudice to the right of the added defendant Redirack and/or Acme Strappings to assert the statute of limitations defense, and to challenge the amendment of the Complaint on the ground that the added defendant(s) did not have notice of the action pursuant to the standards set forth in Rule 15(c)(3).

Further, the Court directs that the plaintiff, in her amended complaint, is to set forth specifically who the directors of the two companies are and how notice was effected through the overlap in the boards of directors. Moreover, the plaintiff is to allege specifically the facts supporting her contentions that Interlake and Acme Strappings are closely related and have an identity of interest for the purposes of Acme Strapping's having had notice of this action at the time it was filed against Interlake. To this end, the Court notes with approval Judge Leisure's thoughtful comments in *Spier v. Erber*, 1990 WL 71502, U.S.Dist. LEXIS 6286 (S.D.N.Y. May 24, 1990):

> "it has become an all too common practice for litigants granted leave to replead to make only minor changes in the original complaint based on an overly restrictive reading of the dismissing court's order, prompting a second motion to dismiss. An amended complaint which fails to replead with sufficient particularity after a finding of lack of specificity may well be regarded by the Court as a frivolous filing in violation of Fed.R.Civ.P. 11."

In the event the plaintiffs do not timely file an amended complaint, or file a complaint that is insufficiently pleaded or not in accord with this Court's ruling, the Court will take appropriate action.

Accordingly, for the reasons stated herein, and for the reasons stated in the record during oral argument held on April 8, 1994, it is hereby

ORDERED, that the motion for summary judgment by the defendant and third-party plaintiff The Interlake Companies, Inc., improperly designated in the caption as Interlake Industries Inc., is granted; it is further

ORDERED, that the Complaint is dismissed as against the defendant and third-party plaintiff The Interlake Companies, Inc., improperly designated in the caption as Interlake Industries Inc., as a matter of law; it is further

ORDERED, that the third-party action in this case is dismissed; it is further

ORDERED, that the plaintiff's cross-motion to amend the complaint pursuant to Fed.R.Civ.P. 15(c) is granted, and the plaintiff is given leave to amend the Complaint in order to add Redirack and/or Acme Strap-

pings Inc. as the defendant(s), without prejudice to the right of the added defendant(s) Redirack and/or Acme Strappings Inc. to assert the statute of limitations defense, and to challenge the amendment of the Complaint on the ground that the added defendant(s) did not have notice of the action pursuant to the standards set forth in Rule 15(c)(3); it is further

ORDERED, that the plaintiff is directed to amend her complaint in conformity with the Court's ruling on the present cross-motion of the plaintiff; it is further

ORDERED, that the plaintiff's (Proposed) Second Amended Complaint annexed to the plaintiff's cross-motion papers is rejected; and it is further

ORDERED, that the plaintiff is directed to serve her amended complaint on the added defendant(s) in accordance with Rule 4 of the Federal Rules of Civil Procedure, and to join the newly added defendant(s) within thirty (30) days from the date of this Order, and to file the same with the Clerk of the Court within such time period.

SO ORDERED.